Opinion on the Court.
Mighael Hedrick, the appellee, filed his hill against the appellant, William Pearce, stating that, on one oc-casbn, being pressed for money, he obtained a loan of *110 one hundred dollars from the appellant, on the terfns, that he was to return him, in a few months, o£ie hundred and twenty-five dollars; and, to secure it, executed his notes for the amount last named, to a certain J. Hedrick, who assigned them to the plaintiff, which he afterwards paid; That he still progressed in borrowing, until he became indebted to the appellant in the sum offive hundred dollars, for which he, the appellant, obtained judgments and issued executions. Under this pressure, he applied to the appellant for further indulgence as to what was due, and also a further loan of one hundred dollars. This was granted, on the terms of his executing a note of nine hundred dollars to the said Joseph Hedrick, who assigned it to the appellant, who gave him, the appellee, a credit of five hundred and seventy-five dollars,, on the judgments due, and advanced to him one hundred dollars more, making six hundred and seventy-five dollars, leaving a balance of usury, of two hundred and twenty-five, pursuant to their usurious agreement; that on the note for nine hundred dollars, suit was brought, judgment obtained, and his land executed and offered for sale; that the appellant still continued to harrass him with the execution, until he was compelled to sell his land to the appellant, at a great sacrifice, to wit, the sum of two thousand dollars, and conveyed it, at the request of the appellant, to the appellant’s brother, and thereby lost much. He charges against the appellant, ten dollars more of usury in another transaction; prays that he may be compelled to refund the whole usury received, and to pay him the real value of the land which he was compelled to sacrifice by such usurious transactions.
Statement of «5e case.
. The appellant admits the usury of twenty-five dollars, on the hundred loaned for a few months, stated in the bill, although he denies having a recollection of the transaction. He admits the complainant (now appellee) called on him to obtain another loan, after his demands against the appellee amounted to upwards of five hundred dollars, and proposed giving notes in the same way, hut that he pointedly refused to loan him any more money; that the appellee then informed him that he was about to sell a quantity of whiskey on a credit, and enquired if the appellant would purchase of him the notes; that he informed- the appellee,, he would purchase bom fide notes, bottomed upon a real transa^ *111 lion, but would -not purchase notes or paper ofany other description; thafr. in ah@U't,dix weeks, the appellee and Joseph Jítédrick called upon him, and'proposed selling ®aaie obligations, representing that t&ey were bona fide, and not giren by way of • shift or'device; that he purchased of Joseph Hedfick the note of nine hundred dollars, in the bill stated, ¡.due one year after date, and gaye-him three-fourths of the amount oficie noth’; but before he’purchafeed, he éñq.uired of the appellee; if if, was fair and bona fide, and if he was willing he,' the appellant, should purchase if; which the appellee answei'-ed'iirthe affirmative; and .'at the same lime he purchased from the appellee another note, on a certain Richard Bp an, and paid him for it. He denies that the note of rvk^e\h&dred dollars was executed in his presence, or that n^Imows'wheré it'xy’as;ex|c,utpd. He alleges, that at thte time he purchased the riihe'liundred dollar note,, tfieapn'iiliee owed him a sum of money, dtie’bymotes pupqlpsed of .other individuals, executed by the appel-íe;e,.oi¿. some of which, he conceives he had instituted suits, hutas to this he. is not certain, amounting to the sum stated in the bill, which were paid to.Jqseph Hed-rick for the appellee’s obligation, and about the sum of' onehWdred dollars, as statedpn the bill, as he supposes, but is, not, certain. He is, however, positive, 'that' he paid this balance to Joseph Hedrick, and denies.that he pu.i;tíf¡.ased the obligation at the request of the complainant. He admits suit, judgment and execution on the note of nine hundred dollars; but not' more speedily than was- necessary to secure his recourse on Joseph Hedrick, the assignor; that after execution!was levied on the farm of the appellee, he gave three months’ indulgence., to enable the appellee to sell the land and raisedhe money; but finding the appellee was not likely Co-sápceed, he again pushed the execution, and told, the appellee he would give two thousand dollars for it,, and the, appellee would not have it exposed to sale, hut agreed tafci.it go at that sum; that his brother agreed to take the-form, and give him, the appellant, a tract of land which “adjoined, him. This arrangement1 was made verbally,, and the appellee conveyed to the brother ©f the appellant, and the brother conveyed to the appoint his own .farm, and then gratuitously gave to the appellee two. hundred dollars, to satisfy him. He dmesv’-ttte land was.,sasriis«<d; bqt. wersithn-contract *112 was voluntarily entered into, and that a full price was given, equal to what the land can now be sold for. As to the charge of usury of ten dollars, -he alleges that it was given him on the, sale of bank stock, which he sold to the complainant at that sum above par.
The court below adjudged all the charges in the hill to be unsupported by testimony, except the sum of twenty-five dollars admitted on the fiyst loan, and the sum of two hundred and twenty-five dollars, the balance of the note of nine hundred dollars. For these two sums the court below gave a decree, with interest thereon fi'om the time, of payment! From this decree the appellant has appealed to this courj;.
It is bvident, therefore, that the correctness of the decree on these two, claims alone, must be first enquired into here; for ifthey be correct, the appellant has no right to complain, however erroneous ' the decree may be in other. respects, he having succeeded on every other ground charged against him. ¡ *
The propriety of the decree, as to the twenty-five dollars, is manifest; because, although the appellant cannot recollect particulars, yet by candor, assumed or real, and through a/ fear and caution of going wrong, perhaps more plausibly pretended, than really felt, he is willing to admit it as stated, lest it may really tu-rn out, as stated; and that money voluntarily paid as usury, may be recovered back by a decree in equity, has be.en too often admitted in this court, to he now questioned.
On the question, whether the fact of usury as to the two hundred and twenty-five dollars, part of the nine hundred dollars, is supported by testimony, we likewise think with the court below.
In cases where one party appeals to the conscience of the other, to say whether there was or was not usury in a transaction, we are often presented with answers both artful and evasive, and so widely' different from the bold and conscientious denial of the fact, that it is often impossible to read them, without suspicion that the fact is different from the first apparent inference. At draughts upon the conscience, which affect the interest deeply, human nature will often both wince and shrink; so that wise is the rule, which precludes a person from being a witness where his pecuniary interest is concern^ ed. In this opinion the answer is not copied, but only its substance given in the previous abridgment; but in *113 its original shape, it is a specimen of the address too often resorted to, rather than to meet the charge directly, At first blush, it would seem to contain a pretty positive denial; but when it is more critically examined, no such denial, as to the two hundred and twenty-five dollars, is contained in it. "So.me dates, sums and circumstances are minutely détailed, while others, where usury may exist, are either not remembered at all, or, lest it may be otherwise, “ it may be as stated in the bill;” The whole story is related and Concluded in a different way from that in the bill, and is so concluded as to leave the inference to be drawn, that the bill is not true, without once positively saying so. Such an answer is liable to be assailed by weak proof; but in this case the proof is not so weak. The deposition of Joseph Hedrick, united with two others, proves facts in-r compatible with a bonafide sale of a note', which would •not be usurious in itself, ami renders too plain a device to avoid the statute. Joseph Hedrick owed the appel-lee nothing; They both attended the salé of the note, and Joseph was but the silent instrument to give the contract the shape it assumed. Debt due by the appel-lee, paid the greatest part of it, and one hundred dollars more was handed to’ Joseph,- and put immediately into the hands of the appellee, without one, word of inquiry on the one side, or assertion on the other; as the answer alleges, that the noté -was based on a bona fide consideration, or that it was sold by Joseph Hedrick for his benefit only. The conclusion of the court be-lpw, that the two hundred and twenty-five dollars was i\sury, secured by stratagein, is therefore correct.
' But it has been contended in argument, that although equity will decree money to be refunded, which. has been voluntarily paid as usury; yet, that in cases where the money has been recovered by process at law, as' this debt was, where the party failed to plead the usury at law, equity will not iriterfere and direct its restoration. This is a question which never has been directly considered by this court, that we can discover, and must now receive its due consideration.
It is clear, from the ancient authorities, that money, voluntarily paid as usury, could not only be recovered, in England, by suit in equity, but also in an action at law. This doctrine was, it is true, denied in one case, in Salkeld, but was sustained bv subsequent decisions. *114 hnd the first decision exploded, as will be seen by the report of the case of Bosanquet vs. Dashwood, and the notes thereon, Cas. Temp. Talbot 37. It was, however, true, that the statutes against usury in that country were highly penal, and subjected the party convicted ‘to forfeiture of the demand, with large additional for-' feitures. Therefore, as it is a principle of equity, that •a court will not enforce a discovery that will lead to a forfeiture, the courts of chancery would not probably have sustained a bill to disclose usury, unless the party-asking it would pay what was really due, in which case his defeating the whole claim was prevented. In this country, however, this reason cannot so strongly apply; for although the statute of this state, under which the present debt was contracted, subjects the party,- where usury is pleaded and proved, to the loss of the whole •debt, yet it also declares that “ any borrower of money or goods may exhibit a bill in chancery against the lender, and compel him to discover, upon oath, the money or thing really lent, and all bargains, contracts or shifts-, which shall have passed between them relative to such loan, or the re-payment thereof, and the interest or consideration for the same; and if thereupon it shall appear that more than lawful interest was reserved, the lender shall be obliged to accept his principal money without interest or other consideration, and pay costs; but shall be discharged of all other penalties.” Thus, if defence against the usury is made at law, the plaintiff loses all, and pays costs, by the first section of the act; if it is made in equity, the very application to that court waives the forfeiture of all but the legal interest, and the rule before spoken of cannot apply; nor can it overrule the express provisions of the statute. Hence, the appellate court of Virginia, and this court also, have sustained numerous injunctions against judgments at law; have purged the judgments of usury, and permitted the party to take the principal. If the courts of equity have thus corrected judgments, while the money is in transitu, even in cases where the party might have availed himself of the plea at law, but did not do so, it is hard to perceive the reason why the same party should not be allowed to do so, after he had paid the money; or that the bare fact of payment should bar him of his redress, when a failure to make his defence at law did not.do it; especially, as the statute allows a *115 disclosure, not only of the money loaned, but of the “repayment thereof” • ■
. 1 here is one other principle of equity which may be relied on as preventing the redress. The 'general rule is, that a court of equity will not relieve against a judgment at law, on the ground of its being contrary to equity, unless the defendant at law was ignorant of the facts set up by him in equity, at the timé of the rendition of the judgment at law, or those facts could not have been received as a defence. While this is admitted as a general rule, it cannot be esteemed an universal one. It is the application of this principle to cases of usury, which'can indubitably be made at law, by chancellor Kent of New-York, which has led us to consider this mat j ter more closely. See Lansing vs. J. and T. Eddy, 1 John. Ch’y. Rep. 49. Wc have not the opportunity of inspecting the statute of New-York; but presume, from the current of decisions by that able chancellor, and especially from the language used by him in the case of Rogers vs. Rathbone, 1 John. Ch. Rep. 367, that the statute of that state is similar to that of England, and subjects the usurer to considerable forfeitures, without expressly opening the door of a court of equity to the other party, as ours does. We also discover the same chancellor, in Thompson vs. Berry and Vanbeuren, 3 John. Ch. Rep. 395, refusing relief against a judgment at law, obtained by default, without insisting on.a plea of usury, on the same principle, and not then suggesting that their statute admitted any access to a court of equity; which renders it more-probable that it gave none. He, however, in the same decree, recognizes a principle settled in England, that money paid for usury can be recovered back, and decrees a recovery against a judgment confessed under a warrant of attorney, in which the party had no opportunity by process to make de-fence, This leads us to conclude, that the statute there against usury gave only a plea at law, and.no de-fence in equity. Here, however, the statute- gives both. The party oppressed may make his election between them, but cannot use both against the same demand ; for if he defends at law, he has no need of the chancery remedy. If.he takes the latter, he cannot avail himself of the former, ev.en by. the way of extracting evidence to be used at law; for his very application to equity, compels him to gay the principal, and debars *116 him of'the defence which would make his adversary lose it. His choice of a court of equity, is, then, for the benefit of his adversary; and it cannot be right to permit that adversary to estop him of the latter remedy in equity, because he failed to inflict a deeper injury, by choosing the former. If this conclusion should be admitted, the remedy given in equity would be of no avail, in every case where the usurer has brought suit at law. To disclose evidence to be used at law, the chancellor cannot; because the application to him waives the right of defeating the principal, and therefore waives the defence at law; and if judgment is obtained, the rule we now combat, would be as conclusive against an injunction, or even an original bill as Mr. Kent has made it, as it would be against a decree restoring the money paid in discharge of that judgment.
Lord Hardwick, in laying down the principles applied to usury cases by Chancellor Kent, sajrs, “ it must appear that the defendant was ignorant, at the time of the trial, of the fact which renders the verdict at law contrary to equity; and even then chancery will not relieve Where the defendant submits to try it at law first, when he might, by a bill of discovery, have come at the fact by the plaintiff’s answer, before trial at law.” But in the prepent ease, we have shown" that the party could not sp use such an answer to defeat the whole claim at law, and that he has ensured part of it to the other pide, by waiving his plea at law. Therefore, while we admit the general principle, as stated, to he correct, we contend that the case of usury, under our statute, forms a just exception.
It is, r moreover, bard |o perceive the reason of excluding a recovery paid for usury, after it is paid in satisfaction of a judgment, more than ini other cases proper for equitable relief; especially, where equity allows a recovery back pf money paid otherwise for the same purpose. The party seeking redress cannot recover back at law against the judgment; for judgment cannot be rendered against judgment in a court of law, It is because the opposite party has received what he pqght not, that be must restore; and how a judgment can allow him to retain it with a better conscience* is hard to perceive. , Equity relieves against usury, because the borrower was in distress, and therefore his free agency is measurably gone, of which the lender, *117 with the power of money in his hands, takés an undue advantage. Is his power less, when armed with aft execution to enforce what he has compelled the other to engage wrongfully; or is his .merit enhanced by such authority?
There is, then, no way of getting over the statute, but by contending that the.section which gives the remedy at law forms the only general defence, while the afore-recited section, which authorises an application to a court of equity, only applies to special cases, where the borrower was unable to prove his case at law, and is therefore compelled to apply to a court of equity for a disclosure.
•The only thing which favors this construction, is the expressions of the statute, “ compel'him to discover upon oath.” These expressions, however, may have a sensible meaning, without confining them to those bills usually denominated bills of discovery. The first sec-, tion, which gave the first remedy by defence at law, imposed a forfeiture of the whole amount. Leave the matter in that situation, and equity might be tempted, by its rules, not to interfere in favor of a complainant, lest it be instrumental in aiding a forfeiture. To remedy this, these expressions are added, and the chancellor is directed not to keep aloof for fear of forfeitures. At the same time the forfeiture is partially remitted by the very act of applying to him. For this purpose, then, and not to designate bills of discovery, the expressions were used. The preceding expressions of the act constrain us to this construction; for without them, their meaning must be cramped and too much limited» Tt -is not the iorrovier alone, who cannot make his defence at law; but ^ any borrower” who may exhibit his bill. Thus, under the statute, defence may be made at law,. or it may be there waived, and application made to equity, subject to the different measures of redress given in the two courts; and the time of application is, while ever the chancellor has jurisdiction of the matter, or has power to decree the money to be restored.
We, therefore, conceive that the court below did not err in compelling the restoration of the money paid after judgment.
The decree must be affirmed with damages and costs.