## Tiller v. Cincinnati Discount Co.

(Decided June 1, 1937.)

As Modified on Denial of Rehearing Dec. 7, 1937.

686

RICHARD PRIEST DIETZMAN and STEINFELD & STEIN-FELD for appellant.

BOOTH & CONNER and WALTER HUFFAKER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellee, the Cincinnati Discount Company, brought suit in equity against the appellant, Armand A. Tiller, alleging in substance and effect that the defendant had been its agent to collect installment payments due on conditional sales contracts assigned to it by F. M. Tiller; that since the death of F. M. Tiller, the defendant had been engaged in the same business of selling musical instruments and had himself transferred

similar contracts to the plaintiff, with the agreement that he would collect the amounts due thereon and make weekly remittances; that he had made, and was continuing to make, large collections without remitting the same according to the terms and contracts of agency and assignment; that he had refused to desist making the collections and to disclose names and addresses of the purchasers whose sale contracts had been sold to the plaintiff. An injunction was asked against the defendant and an accounting and judgment prayed according to the itemized statements filed with the petition.

The answer traversed the allegations of the petition respecting the nature of the relationship and the transactions between the parties and other material things. As a counterclaim, it was averred that the defendant and his father, F. M. Tiller, for a number of years had conducted a piano business in Louisville; that, after the father's death, he had individually carried it on; that between the years 1921 and 1932 he and his father had borrowed from the plaintiff $250,000 at various times and in various sums and had repaid to it $350,000, the last payment being made March 1, 1935; that of the sum so paid in excess of $63,400 was usury. It was further alleged that the defendant and his father had pledged to the plaintiff conditional sales contracts and mortgages executed by their customers, including those mentioned in the petition; that the plaintiff had treated the account for money so advanced as a loan to F. M. Tiller and the defendant as one continuous account, and had charged same to the defendant and demanded payment thereof from him. Judgment for $63,400 with interest from March 1, 1935, was asked.

The plaintiff filed a motion that the counterclaim be made more specific and set out the date each alleged loan was made, the amount and the collateral pledged, the dates of repayments and the amounts, and the computation of what would be legal interest. The motion was sustained. An amended answer and counterclaim was then filed. In it the defendant averred he had no knowledge or record of the respective dates or sums borrowed by his father or himself, nor the collateral pledged to secure each loan, nor the repayments made (except copies of a small portion of the items, which had been furnished him by the plaintiff), nor did he have within his knowledge or record the amount of in-

terest due on each of the loans referred to or the dates of payment of the $63,400 of usury. It was further alleged that neither he nor F. M. Tiller kept such records. This amendment averred that the plaintiff was in possession of all the detail facts, and he, the defendant, was not, and that the only way the amount of usury involved in the account sued on could be ascertained was by a full disclosure of the facts by the plaintiff. Interrogatories addressed to the plaintiff, asking for the respective dates and amounts of money paid to F. M. Tiller and the defendant and the dates and sums repaid by them, were attached. The pleading prayed that the plaintiff be required to answer the interrogatories and asked all equitable relief.

A demurrer was filed to the counterclaim as thus amended and also a motion to strike it. In support of the motion an affidavit was filed stating the volume and character of the business transactions between the parties and showing that great expense would have to be incurred in order to make the disclosures sought by the counterclaim and the interrogatories. The court sustained the motion and ordered the counterclaim as amended and the interrogatories stricken. The defendant declined to plead further with reference to the counterclaim and it was dismissed, but made a part of the record for purposes of appeal.

The transactions described in the pleadings seem to be such as are regarded as borrowing and lending rather than sales or assignments. Home Bond Company v. McChesney, 239 U. S. 568, 36 S. Ct. 170, 60 L. Ed. 444.

It is a familiar rule that a counterclaim is to be measured as is a petition. By such measurement this pleading was not sufficient. A blanket statement that during the period of eleven years the defendant and the one whom he represented paid to the plaintiff $350,000, of which $63,400 was usury, is but a conclusion. It alleges usury without facts and is too indefinite and general to authorize a judgment that there was usury and a recovery for a definite sum. Latham v. Glasscock, 10 Ky. Law Rep. 77; Blythe v. Hardy, 3 Ky. Op. 693; Boyd v. Smoot, 5 Ky. Law Rep. 119; 22 Enc., Pleading & Practice, 430, sec. 7; 66 C. J. 298; Kase v. Bennett, 54 N. J. Eq. 97, 33 A. 248. See, also, Woolfolk v. Thomas, 164 Ky. 43, 174 S. W. 739; Winberg v. Camp Taylor

Development Company, 264 Ky. 612, 95 S. W. (2d) 261. But coupled with these general allegations is the prayer for discovery and a demand for an answer to interrogatories. If allowed and given it would enable the pleader to cure the defect of his pleading. Without it. he cannot possibly do so. The right. to have that information from the adverse party is the particular question before the court.

Ordinarily the right of discovery authorized by the modern code of practice is strictly incidental to the pleading only as affords facility of proof. It is an accessory to the suit to recover. Having properly pleaded material operative facts, there may be discovery of evidence or the compulsion of production of documents in the possession of the adversary party to be used in establishing the pleaded facts. In short, there must be a case well stated in order to authorize it. King's Adm'r v. Evans, 6 Ky. Op. 114; Marion National Bank v. Abell's Adm'r, 88 Ky. 428, 11 S. W. 300, 10 Ky. Law Rep. 980; Childs v. Missouri, K. & T. Ry. Co. (C. C. A.) 221 F. 219; General Film Company v. Sampliner (C. C. A.) 232 F. 95; Gasoline Products Company v. American Refining Company (D. C.) 12 F. (2d) 98; 18 C. J. 1066. If there be no sufficient statement of a cause of action, the incidence of discovery falls with the principal.

But this case is peculiarly ruled by a statute and not by the code of practice.

Section 2219, Statutes, after declaring all contracts and assurances made directly or indirectly for the loan or forbearance of money at a greater rate than legal interest shall be void as to the excess interest, and expressly authorizing recovery thereof, provides:

"A court of equity may grant relief for any such excess of interest, and to that end compel the necessary discovery from the lender or forbearer."

In Pearce v. Hedrick, 13 Ky. (3 Litt.) 109, decided in 1823, may be found an interesting discussion of the procedure followed in seeking relief from usury. The statute of that day subjected the lender to the loss of his whole debt where usury was pleaded and proved. Yet it also provided that:

"Any borrower of money or goods may exhibit a bill in chancery against the lender, and compel him to discover, upon oath, the money or thing really lent, and all bargains, contracts . or shifts, which

shall have passed between them relative to such loan, or the re-payment thereof, and the interest or consideration for the same; and if thereupon it shall appear that more than lawful interest was reserved, the lender shall be obliged to accept his principal money without interest or other consideration, and pay costs; but shall be discharged of all other penalties.''

The opinion interprets the statute as giving the party oppressed, or the borrower, the right of election between proceeding at law or in equity. If he proceeded at law, he might save the entire debt, but could not avail himself of the chancery remedy of discovery, even by way of extracting evidence to be used at law. If he proceeded in equity, he could have discovery and repayment of usury and interest, but was compelled to pay the principal of his obligation. Such was the predecessor to our current statute which now serves only to purge the obligation or to permit recovery of usury.

The question we have before us is narrowed. Is the right of discovery allowed by the statute to be as circumscribed as that allowed by the code in its several applications? Is it also incidental so as to require likewise a good pleading of a cause of action for the recovery of usury? The intention of the Legislature at the time of the enactment of a statute is controlling. This calls for some historical research in the genesis and development of the statute in order to ascertain what it means.

The predecessor of the current statute was an act of January 26, 1798. 2 Littell's Statutes of Kentucky, 45;. 2 Morehead & Brown Statutes (1834 Ed.) 852. It was as we have quoted above. The act was taken from the Virginia act of 1730 as amended in 1734. 4 Henning, 294, 397. And in Pearce v. Hedrick, supra, it is traced back to England. The current statute, section 2219, appears in the revision of the statutes by Wickliffe, Turner and Nicholas following the adoption of the Constitution of 1850, being effective July 1, 1852. Prefaced by a paragraph establishing the legal rate of interest at 6 per cent. (now the first paragraph of section 2218), section 3 of that statute differs only in the use of ''Chancery Court'' instead of ''Court of Equity.'' Revised Statutes of Kentucky, W. T. & N. 1852. In 1878 (chapter 275, Acts 1877-1878), the Legislature amended

and repealed the article of the general statutes (chapter 60, Bullitt & Feland, 1877), but did not in any way alter the provision for discovery. Thus we have a law winding far back in our legal lineage and continuing as a statute from the beginning of the commonwealth. The acceptance and re-adoption of this procedural law, peculiar now as a vestige of a former practice, after the adoption of the code of practice (in 1851), destroys the idea that it was superseded by the code as were all other inconsistent procedural laws. This was recognized in 1859 in Chinn v. Mitchell, 59 Ky. (2 Metc.) 92, where one against whom a judgment had gone brought suit in equity to enjoin the enforcement of a replevin bond upon the ground that the balance due on it was usury. In referring to this provision of the statute (then section 3, page 420, Revised Statutes), the court stated: "Such was the law prior to the adoption of the statutes, and such is still the law." But it was held in that case the defendant was too late and that in order to obtain relief from the judgment he must pursue it in the manner prescribed by section 14 (now 17) of the Civil Code of Practice.

The term "discovery" in the practice has several shades of meaning. For some hundreds of years discovery by a bill in equity supplied the only means by which one party to a litigation could avail himself of evidence exclusively within the knowledge of his adversary or contained in documents under his control. 9 R. C. L. 166; Discovery Before Trial, Ragland, p. 6 et seq.; 18 C. J. 1058, 1066. Such bill of discovery could be maintained not only in aid of a suit already brought but to aid the plaintiff in a suit which he intended to bring if the bill disclosed a cause of action. 9 R. C. L. 173; Discovery Before Trial, p. 12; Outen v. Bainbridge, 7 Ky. (4 Bibb) 417; Sprigg v. Jarret, 8 Ky. (1 A. K. Marsh.) 335; Lynch v. Sumrall, 8 Ky. (1 A. K. Marsh.) 468; Nourse v. Gregory, 13 Ky. (3 Litt.) 378; Bohannon v. Combs, 51 Ky. (12 B. Mon.) 563; Semple v. Murphy, 47 Ky. (8 B. Mon.) 271; Bartlett v. Marshall, 5 Ky. (2 Bibb) 467. Cf. Marion National Bank v. Abell's Adm'r, 88 Ky. 428, 11 S. W. 300, 10 Ky. Law Rep. 980. A remnant of the practice is continued by section 685 of the Civil Code of Practice, authorizing a suit by one jointly or severally liable on a contract against some of his joint obligors to obtain names and addresses of others who are also liable.

It is this particular right of discovery or mode of procedure that is provided by the statute under consideration, according to its interpretation in Pearce v. Hedrick, supra. But as said there (13 Ky. [3 Litt.] 109, op. cit. page 116), there could not be under it a right to disclose evidence to be used at law because the application to the chancellor for relief of usury waived the right of defeating collection of the principal of an obligation. It was regarded as an equitable bill of discovery with an exception in cases of usury. One invoking this right of discovery must show by his averments, at least in a prima facie manner, that he has a good cause of action. Pomeroy's Equity, sec. 198.

The abhorrence of usury, so often secured by a stratagem, and the desire of Legislatures and courts to ameliorate conditions of a borrower compelled to pay same, is a part of our legal inheritance. Cf. Commonwealth v. Donoghue, 250 Ky. 343, 63 S. W. (2d) 3, 89 A. L. R. 819. The continuance of this statute (section 2219) must be given meaning and effect. To require the same degree of definiteness in a pleading under its provisions, in order that a party may avail himself of the right of discovery, would be to ignore the history and judicial interpretation of the statute, render it nugatory, and destroy its purpose. If the borrower knows he has paid usury but because of lack of detailed knowledge he cannot plead it specifically, he is left at the mercy of the lender, who may have all records as is here alleged.

Treating the subject of pleading in bills in equity generally as to facts peculiarly within the defendant's knowledge, it is said in 21 C. J. 395:

"Aside from the relaxation of the rule requiring positiveness of statement and permitting allegations on information and belief of facts peculiarly within the knowledge of defendant, it is also permitted under such circumstances to make the statement less certain and precise in substance than the general rules require."

We are of opinion that the allegations of the counterclaim are sufficient to require the court to grant discovery and to compel answer of the interrogatories propounded.

But this right of discovery is not without limit. It

is confined to facts material to a party's own cause of action, and does not authorize immaterial or irrelevant inquiry. Discovery Before Trial, p. 132; 18 C. J. 1058, 1067. It is doubtful from the record whether the defendant, individually, is entitled to recover any of the usury which he charges to have been paid by his father and predecessor in business. The court should determine the extent of his right of recovery as claimed and confine the order of discovery to transactions covered thereby.

The party called upon to incur an extraordinary expense incident to supplying the information demanded should be protected. Pursuing the course of practice followed under the old bill of discovery, the court may in its discretion require the party making the demand to pay or secure the payment of such costs. However, though he should do this in the first instance, should he ultimately succeed in his case the costs would be recoverable as are other costs. 9 R. C. L. 186; note 42 L. R. A. (N. S.) 280; 18 C. J. 1078. In this case we think the counter-claimant, Tiller, should be required as a condition to granting the order to pay or secure by bond the reasonably estimated costs to be necessarily incurred in answering his interrogatories.

The judgment is reversed.

Whole court sitting.